UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LORRAINE JO NEW, | ) | CIV. 13-5029-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Lorraine New filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 8). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 10). The parties filed their JSMF. (Docket 12). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is denied, and the defendant's motion to affirm the decision of the Commissioner (Docket 26) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 12) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

On March 29, 2010, Ms. New filed an application for disability insurance benefits alleging a disability onset date of March 17, 2008.  Id. at ¶ 1.  Ms. New filed a request for a hearing and an evidentiary hearing was held on February 21, 2012.  Id. at ¶ 2.  On June 15, 2012, the ALJ issued a decision finding Ms. New was not disabled and denying benefits.  Id.  Ms. New sought review by the Appeals Council.  Id.  The Appeals Council denied Ms. New's review request.  Id.  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  Id.; see also 42 U.S.C. § 405(g); 20 CFR § 422.210(a).  It is from this decision which Ms. New timely appeals.

The issue before the court is whether the ALJ's decision of June 15, 2012, that Ms. New was not "under a disability, as defined in the Social Security Act from March 17, 2008, through [June 15, 2012]" is supported by substantial evidence on the record as a whole.  (Administrative Record[1] at p. 17); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

---

[1]The court will cite to information in the administrative record as "AR at p. ___."

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the decision of the Commissioner if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision

" 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment–one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations.  (AR at pp. 10-17).  At step four of the evaluation, the ALJ found Ms. New "could perform her past relevant work as a cashier—gambling as previously performed and as generally performed in the national economy" and was, therefore, not disabled.  Id. at p. 17.

### PLAINTIFF'S ISSUES ON APPEAL

Plaintiff's brief in support of her motion to reverse the decision of the Commissioner argues the ALJ improperly:

1.  Rejected Ms. New's credibility;

2.  Rejected Dr. Mills' opinion; and

3.  Failed to develop the record.

(Docket 15 at p. 1).  Each of these claims will be separately addressed.

**1.   MS. NEW'S CREDIBILITY**

Ms. New argues the ALJ failed to "identify any 'good reasons' to reject the Claimant's credibility." Id. at p. 9. "The ALJ's finding that [Ms. New's] 'sparse' treatment renders her testimony suspect misses the mark." Id. Claimant's "testimony concerning her ability to do small activities around the house such as cooking, occasionally going shopping, and light housework, but that she can only sit or stand for a half hour at a time is completely *consistent* with her claim for disability." Id. (emphasis in

5

original). In response, the Commissioner argues the ALJ's credibility determination is supported by substantial evidence in the record as a whole. (Docket 17 at pp. 2-4).

The ALJ determines the weight attributable to a claimant's subjective complaints, including pain, according to the framework created in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Five Polaski factors guide the ALJ's credibility determinations: "1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions." Choate, 457 F.3d at 871. The ALJ need not mechanically discuss each of the Polaski factors. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). Although the ALJ can discount a claimant's subjective complaints for inconsistencies within the record as a whole, "the ALJ must make express credibility findings and explain the record inconsistencies that support the findings." Dolph v. Barnhart, 308 F.3d 876, 879 (8th Cir. 2002). The court will not disturb the decision of an ALJ who seriously considers, but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

In this case, the ALJ acknowledged the analytical framework for credibility determinations and stated he "considered all symptoms and the

extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (AR at pp. 12-13). With this framework in mind, the ALJ concluded:

> While the claimant may no doubt have pain, the important question is the severity of the pain, and after considering the claimant's statements, the medical history provided from the treating doctors, and viewing the objective medical evidence in the most favorable light to the claimant, it is concluded that the claimant is not as restricted as she alleges, and the undersigned finds the claimant's complaints of severe, disabling pain symptoms are not fully credible.

Id. at p. 13. In arriving at this credibility determination, the ALJ considered the following:

> [T]he record reflects that the surgery was generally successful in relieving symptoms, with sparse treatment thereafter. Id.;
>
> [T]he claimant is self-limiting - contrary, in fact, to the recommendation of her treating physician. Id.;
>
> [T]he claimant demonstrated active abduction to 80 degrees, which is nearly full range of motion. Id.;
>
> Dr. Anderson initially told the claimant to try to go back to work for 4 hours, however this itself was not a permanent restriction, but rather he recommended starting at 4 hours per day for 10 days, and then increase to full-time. Id.;
>
> [B]y the claimant's report she is evidently presenting for job interviews and telling potential employers that she can *only* work 4 hours . . . . Id. at p. 14 (emphasis in original);
> [I]n October 2008, Dr. Rand Schleusener, MD, opined that claimant had reached maximum medical improvement, and opined she could continue light duty work with no lifting of more than about 25 pounds. Id.;

7

> [A]lthough the claimant was released to work, notes in April 2009 reflect the claimant did not return to work because "the casino had never called her to return." Id.;
>
> Exam [in April 2009] showed that claimant had excellent range of motion, and some crepitus but not swelling, and hand function was satisfactory . . . and the claimant is without subsequent presentation for any treatment or complaints thereafter until 2010, thus nearly one year later. Id.; and
>
> The claimant has also described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Id. at p. 15.

The ALJ noted that while Dr. Anderson was uncertain as to why Ms. New "was requesting narcotic pain medication, . . . he did provide her with a prescription of Darvon." Id. at p. 14. There is no evidence Dr. Anderson renewed this prescription more than twice or provided Ms. New with other pain medications, except for Lidoderm patches. (Docket 12 at ¶ 11). Ms. New reported to Dr. Mills in April 2012 that she was taking only Tylenol and Ibuprofen, as needed, and received some benefit from the Lidoderm patches. Id. at ¶ 13. "A lack of strong pain medication is inconsistent with subjective complaints of disabling pain." Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (citing Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992).

Ms. New objects to the ALJ's determination her daily activities did not support her claims of disabling pain. Based on Ms. New's reports and testimony, the ALJ acknowledged "claimant reports she attends to her own personal needs and hygiene, prepares complete meals on a daily basis, does

8

household chores including house cleaning and laundry, does yard work, cares for her pets, goes grocery shopping, goes to church and goes to visit friends." (AR at p. 15) (internal citation omitted).

When a claimant's activities are inconsistent with their claimed level of disability, an ALJ may properly reject the claimant's testimony. Haley, 258 F.3d at 748. Even with Ms. New's medical history and level of pain, the evidence in the record as a whole supports the ALJ's finding that Ms. New's daily activities are inconsistent with her claimed limitations. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (noting "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

The court finds the ALJ properly considered and discounted Ms. New's subjective complaints. The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted). The ALJ's determination as to plaintiff's credibility stands. Ms. New's challenge to the ALJ's decision on this ground is denied.

**2. DR. MILLS' OPINION**

Ms. New claims the ALJ improperly dismissed Dr. Mills' opinions as a rehabilitation specialist. Dr. Mills saw claimant two times. (Docket 15 at p. 10). She argues "[b]ecause the ALJ erroneously classified Dr. Mills as a non-examining physician whose opinions are not considered substantial evidence, the ALJ's decision is affected by error of law." Id. at p. 11. In summary, Ms. New asserts "rejection of Dr. Mills' opinions is unsupported by any 'good reasons.' " Id. at p. 12.

Dr. Mills initially saw Ms. New at Rapid City Regional Hospital following her accident of March 18, 2008. (Docket 12 at ¶ 12). He performed a physical examination, viewed various records, and recommended Ms. New for admission to Rapid City Regional Rehabilitation Hospital. Id.

Dr. Mills did not see Ms. New again until April 25, 2012, at the request of the Social Security Administration. Id. at ¶ 13. Dr. Mills reviewed medical records and conducted a physical examination of Ms. New. Id. During this examination Dr. Mills noted Ms. New was taking Tylenol and Ibuprofen as needed and was experiencing some benefit from Lidoderm patches previously prescribed by Dr. Anderson. Id. It was Dr. Mills' opinion Ms. New could sit for about 20 minutes to one-half hour, stand for

one-half hour, walk one block with standing being the most fatiguing, and that she was only active for about six hours per day. Id.

The ALJ assigned "less weight" to Dr. Mills' opinions. (AR at p. 16). The ALJ concluded:

> Dr. Mills opinions appear to be based in part upon the claimant's subjective complaints, however those subjective complaints are not consistent with medical notes from treating physicians. As a general matter, the report of a consulting physician who examined a claimant once does not constitute "substantial evidence" upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physicians.

Id. The ALJ pointed out Dr. Mills' opinions are premised upon only part of Ms. New's medical records, without consideration of those records which showed her conditions "improved significantly, with very little treatment sought by the claimant." Id.

Ms. New argues Dr. Mills should not be considered a consulting physician, but rather a treating physician since he treated her one time in 2008 and saw her again in 2012. (Docket 15 at p. 11). While Dr. Mills was a treating physician in 2008, he was acting as a consulting physician at the request of the Social Security Administration when he conducted the 2012 examination. The ALJ is instructed to give greater weight to those physicians who are "most able to provide a detailed, longitudinal picture . . . and may bring a unique perspective . . . that cannot be obtained . . . from reports of individual examinations, such as consultative examinations . . . ."

11

20 CFR § 404.1527(c)(2).  "When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."  Id. at § 404.1527(c)(2)(I).  In 2012, Dr. Mills was a consulting physician not a treating physician.

Ms. New also argues the ALJ's rejection of Dr. Mills' opinions was improperly based on an erroneous consideration of an "amended onset date."  (Docket 15 at p. 12) (referencing AR at p. 16).  The ALJ properly identified Ms. New's onset date at the hearing and in the decision.  (AR at pp. 8, 10, 14, 17 & 29).  The court finds this misstatement about an "amended onset date" was simply a mistake.  "There is no indication that the ALJ would have decided differently had he [stated "onset date"] . . . rather than [amended onset date], and any error by the ALJ was therefore harmless."  Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008).

The ALJ gave "substantial weight" to the opinions of Dr. Anderson and Dr. Schleusener.  Their opinions were supported by the consulting opinion of Dr. Entwistle.  The ALJ gave "less weight" to Dr. Mills' opinions.  When opinions of a consulting physician conflict with the consistent opinions of treating physicians and a consulting physician, the ALJ must resolve the conflict.  Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007).  The ALJ performed the comparison, resolved the conflict and justified his conclusion

12

accepting the opinions of Drs. Anderson, Schleusener and Entwistle over the opinions of Dr. Mills. (AR at p. 16). The ALJ gave good reasons for not assigning controlling weight to Dr. Mills' opinions and for discounting his opinions. Dolph, 308 F.3d at 878-79. It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801.

Ms. New's challenge to the ALJ's decision on this ground is denied.

**3.    FAILURE TO DEVELOP THE RECORD**

Ms. New asserts the ALJ failed to properly develop a complete record in that Dr. Mills said "because of continued memory complaints, consideration for repeat neuropsychological assessment might be indicated if this is a concern." (Docket 15 at p. 13). She argues "[t]he ALJ's failure to follow Dr. Mills' recommendation to order a repeat neuropsychological assessment caused unfairness and prejudice resulting from an incomplete record and requires a remand. . . . In addition, Dr. Mills recommended that if more specific information concerning New's physical restrictions is required, then he recommended a functional capacities assessment." Id. at pp. 13-14. Ms. New claims this error mandates a remand. Id.

"The ALJ has a duty to develop the facts fully and fairly, particularly when the claimant is not represented by counsel. . . . Where the ALJ has

13

failed to fully develop the record, this court has required the Secretary to reopen the case until the evidence is sufficiently clear to make a fair determination as to whether or not the claimant is disabled." Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994) (referencing Driggins v. Harris, 657 F.2d 187, 188 (8th Cir. 1981) (other citation omitted).

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). "The regulations make this nature of SSA proceedings quite clear. They expressly provide that the SSA 'conduct[s] the administrative review process in an informal, nonadversary manner.'" Id. at p. 111 (citing 20 CFR § 404.900(b)). "The regulations further make clear that the [Appeals] Council will 'evaluate the entire record,' including 'new and material evidence,' in determining whether to grant review." Id. (citing 20 CFR § 404.970(b)).

"[S]ocial security hearings are non-adversarial. . . . the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." Id. (referencing Richardson v. Perales, 402 U.S. 389, 410 (1971) ("The social security hearing examiner,

14

furthermore, does not act as counsel. He acts as an examiner charged with developing the facts.") (other reference omitted). "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008).

In this case, Ms. New appeared *pro se* at the hearing. (Docket 12 at ¶ 2). Twice during the hearing, the ALJ interposed objections on behalf of Ms. New to protect her record in the event of an appeal from an adverse decision. (AR at pp. 27 & 43). The ALJ decided to request updated records from the Kyle Indian Health Services Clinic[2] and to send Ms. New for an additional examination of her back and shoulder. Id. at pp. 41-42 & 51-52. Ms. New was to receive a copy of the examination report and was invited to submit comments or request another hearing if she wanted one. Id. at p. 51.

The post-hearing examination was performed by Dr. Mills on April 25, 2012. (Docket 12 at ¶ 16). His report reconfirms Ms. New's physical

---

[2]The Kyle Clinic records, if they were requested, do not appear in the administrative record. See AR at pp. 18-21. Neither party argues this deficiency in the record is significant to the ALJ's decision.

15

injuries, Dr. Anderson's left shoulder surgery, and the "restrictions in regard to arm and use thereof." (AR at p. 317). Dr. Mills made the following suggestion: "[i]f more specific information is required, I would recommend that she have a functional capacities assessment be performed by physical therapy with the work restrictions above as definition to further define this." Id. Dr. Mills also noted: "I would suggest if mentation and memory are issues and return to work type questions then that she have a repeat neuropsychological assessment to define this. . . . Because of continued memory complaints, consideration for repeat neuropsychological assessment might be indicated if this is a concern." Id.

At no time did Ms. New suggest her memory issues were a significant work impediment. Ms. New testified she felt capable of working four hours per day. Dr. Mills' recommendations could be considered simply suggestions. Having examined the record, the court concludes that a "reasonably complete record" was developed, particularly in light of the opinions of Drs. Anderson, Schleusener and Entwistle. Clark, 28 F.3d at 830-31.

Ms. New's challenge to the ALJ's decision on this ground is denied.

16

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is denied.

IT IS FURTHER ORDERED that defendant's motion to affirm the decision of the Commission (Docket 16) is granted.

Dated September 30, 2014.

        BY THE COURT:

        /s/ *Jeffrey L. Viken*
        JEFFREY L. VIKEN
        CHIEF JUDGE